East of the morning 23-30386 Lewis v. Crochet, Mr. Black, Mr. Black, I'm sorry. May it please the court, my name is Brandon Black. I'm with Jones Walker in Baton Rouge. I'm here with my co-counsel, Jay Cullens. We're both graduates of the LSU Law School. I live about a mile from here, so this is about as convenient as possible. Your Honor, this case is about two real issues. One is, does the crime fraud exception apply to the attorney-client privilege? And secondly, did LSU violate LARS 14-132B, which is concealment of a public record, when it stored an investigation report of sexual harassment allegations against Les Miles in 2013 in the offices of LSU's attorney who conducted the investigation? And then also, can a public record even be concealed if it hasn't been requested? And so all of that plays into the crime fraud exception. So I represent Bob Barton and Vicki Crochet, who are partners in the law firm of Taylor, Porter, Brooks, and Phillips. During the relevant time period, they represented LSU with respect to the 2013 Miles report. The appellee, Sharon Lewis in this case, is a former associate athletic director of LSU. She filed suit in 2021 against LSU, asserting employment claims, and filed suit against numerous other individuals, asserting RICO claims. Those RICO claims were dismissed on June 16, 2022, under Rule 12B6 motion. That dismissal was affirmed by the Fifth Circuit in Lewis v. Danos, 83, Fed Fourth, 948. As of June 16, 2022, Barton and Crochet were no longer parties to this dispute. So the facts are, in 2013, student number two, who remains anonymous to this day and who does not want to be identified to this day, made sexual harassment allegations against Les Miles. At the time, LSU did not have a Title IX department and didn't have a general counsel and had an interim president. So the interim president, William Jenkins, decided to hire outside counsel to conduct the investigation. And that outside counsel was Barton and Crochet. Barton and Crochet did an investigation, interviewed witnesses, prepared a report, and shared it with the president, the board of supervisors chairman, the athletics committee participants of the board of supervisors, the athletic director, and two members of the athletic department. The report was then stored at the offices of Taylor Porter, who conducted the investigation. Again, there was no Title IX department at LSU at the time, no general counsel. So they stored it at their offices there. So fast forward to 2020, so seven years later, the USA Today made a Public Records Act request to LSU for this report and other related documents. LSU objected, claiming the document was not a public record based on privacy concerns, especially related to student number two, who, again, has not been identified. On January 18, 2021, USA Today filed a written mandamus seeking the production of that public record. The LSU gathered the public record, asserted its defenses in the case, provided it to the state court judge. The state court judge did an in-camera review, redacted large sections of the report based on privacy and attorney-client privilege, because those were not public records under the Public Records Act. And then the parties agreed to produce the report to USA Today. So the case just ran like most Public Records Act cases run. There wasn't anything being concealed. The documents were identified once requested. Defenses were asserted. And ultimately, portions of the report were produced to the USA Today. So fast forward to 2021, eight years after this report was done. And we have this federal lawsuit pending in the Middle District of Louisiana related to the employment claims and the RICO claims. So as of June 16, 2022, Barton & Crochet are dismissed. During that fall, Ms. Lewis wanted to depose Barton & Crochet. Regarding their legal advice they provided to LSU with respect to the storage of that report in Taylor Porter's records. And also wanted privileged communications documents related there too. So LSU filed a motion for protective order on October 28, 2022. Pelley, Ms. Lewis filed three separate oppositions. And those three oppositions spent two sentences on concealment of a public record, LARS 14 colon 132. LSU, of course, looks like a throwaway argument, spent about three sentences responding to it. So you have five sentences. Then in March 14, 2023, the district court ruled in about 20 pages, based on those five sentences, that a public record had been concealed when it was stored in the records of LSU's attorney, Taylor Porter. But ruled that the crime fraud exception didn't apply for other reasons. And then 14 days later, instructed Lewis to file a motion to compel the depositions of Barton & Crochet, based on the crime fraud exception. And that was to be filed on April 11, 2023. So on that day, Lewis filed a motion to compel. And on behalf of the non-parties, Barton & Crochet, we filed a motion for protective order. And for the first time, laid out all of these arguments that you've read in the briefs about why the Public Records Act didn't apply. The court, in its ruling on May 17th, refused to consider the arguments, claiming that Barton & Crochet, although non-parties, had sat idly by, and should have addressed it before, and just rejected the arguments, and wouldn't even consider them. So on June 15th, we filed an interlocutory appeal, which is before the court today. LSU filed a writ of mandamus as well. The writ of mandamus was denied in 2023, US Appellate Lexus 26731, October 6, 2023, on the grounds of prematurity. The issues before the court today were not decided in that motion. The court said, well, the district judge may decide, on an in-camera view, not to permit the production of these documents. And also, the district court may decide to exercise control over any deposition of Barton & Crochet, and maybe it won't be an issue. So they decided it was premature. So what happened in the district court? On November 27th, Barton & Crochet were listed as witnesses. In a motion in limine, the district court decided the crime fraud exception does not apply to trial testimony, and therefore, Barton & Crochet wouldn't have to testify. Then, 14 days later, the district court decided, oh, the crime fraud exception does apply to trial testimony during the trial. She decided that, but then ordered that an LSU employee then testify about those attorney-client communications, and that Barton & Crochet wouldn't have to testify. Well, since that time, this ruling that LSU violated 14 colon 132b  for a new trial, judiciary complaints against state court judges, and most recently, in a defamation claim filed in the Middle District of Louisiana about 10 days ago against Barton & Crochet, where it's alleged that Barton & Crochet lied that plaintiff fabricated evidence because they're violated, or participating in the violation of LARS 14 colon 132. So we're here. It's not moot. It's still very active, and still very much in dispute. And we very much would like the court to decide the issue. So the crime fraud exception comes into play if the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme. So there are three factors. Number one, the moving party must make up an independent prometheation case that a crime or fraud has been committed. That's where LA 14 132 comes into play. The moving party must then demonstrate that the client intended to further a crime during the client representation. And the moving party must then demonstrate that the privileged information bears a relationship to the alleged crime or fraud. So with respect to the first element, LARS 14 colon 132b, second degree injuring of a public record is the intentional removal, mutilation, destruction, et cetera, or concealment of any record, document, or other thing defined as a public record pursuant to RS 44 colon 1, and be required to be preserved in any public office or by any person or public officer. So the first question is, was the Moss report a public record? Portions of it were and portions of it weren't, as the state court judge decided when it redacted large portions of it. So what happened here, we just went through that about what happened. So if you get to, was the public record concealed? If it was stored at Taylor Porter's offices, could it be concealed? Well, the statute says there's no obligation to produce a public record until it's requested. And that's LARS 44 colon 32 and LARS 44 colon 33. Can't be concealed unless it's requested. There's no duty to turn over all public records to newspapers when they're generated. When someone has a request for a public record, then it has to be produced. And then if it's concealed at that point, then you have a potential criminal violation. Well, here, when it was requested, it was identified, segregated. It was, defenses were presented, and then it was ultimately produced pursuant to the writ of mandamus filed in state court, subject to redaction by the state court judge. So the defenses of LSU were vindicated here. The record was never concealed upon request. It was identified, segregated, and ultimately produced. So you couldn't have a criminal concealment here because there never was concealment. Once requested, it was produced. What did the district court rely on to find that it was concealed? The district court didn't address that issue. It just ruled that because it was stored off-site in the lawyer's office, it was concealed. So there never was any analysis of what concealment is and how it can occur in the public records purview. In addition, there are at least three Louisiana cases have decided that you can store public records off-site. You haven't lost. They have to maintain, the public body has to maintain custody or control of the public record. And it can control and have custody over public records that are in the hands of attorneys or third parties, an agency's engineer, an agency's architect. Anyone who does work for a state agency is going to have public records in its files. And that state agency does have custody and control over that because they can ask that it be provided to them, especially the attorneys in Taylor Porter City. So specifically in the Thomas Picayune case, 645 Southern 2nd, 1174, it says, LARS 44 colon 1A3 permits transfer of the physical custody of a public record to another. And that's what happened here. Judge, the district court did not consider that in its analysis. Was she provided that? So that was the problem, Your Honor, is that there were two sentences in the Lewis's briefing on this. LSU then responded. You know, they only have 25 pages to respond. Spent three sentences on it, since it was only a two-sentence kind of throwaway argument. So that's what she had before her when she made this ruling. And then when we filed our motion for protective order, she refused to address the arguments treating it as a motion for reconsideration, even though we're nine parties to the case. So that's what happened factually. In addition, the statute requires that the public record be something they're required to hold onto. And the statute says that public records can be destroyed after three years. So it wasn't a record that was required to be held onto. Under LARS 44 colon 36, it could have been destroyed in 2016. And so, again, it wasn't a record that was required to be held by the public body. Lewis will refer to Title IX, which has a seven-year record keeping requirement. And if this was a Title IX investigation, they would say it had to be held for seven years. But that regulation was not effective until August 14, 2020. Seven years after this investigation took place, that's 34 CFR 106.45B10. So that doesn't apply here. Regarding step two of the analysis, your honor, Lewis must make a showing that LSU intended to further a crime during the attorney-client representation. The district court relied on testimony as represented by Lewis in her brief by Joe Oliva. And the testimony was represented from Joe Oliva, the athletic director, was represented to be that the records were stored in Taylor Forward's offices to stop the Taylor Reporter investigation from becoming public information. But that's not what Joe Oliva testified. What he actually testified in the record at 8482 is that, totally my opinion, I think it was to protect the name of the young lady and to stop it from becoming public information. So the reason that Joe Oliva believed it was stored at Taylor Porter was to stop the identity of student number two from becoming public knowledge. And so it wasn't related to any showing that LSU intended to further a crime. And that was an error in the district court's ruling. Regarding step three of the crime fraud exception, Lewis made no attempt to show that privileged information bears a relationship to the alleged crime or fraud in her findings. And in fact, there isn't any relationship. And so we assert that the district court abused its discretion in finding that the crime fraud exception to the attorney-client privilege applies here. And we'd ask the court to reverse that ruling. So the crime that was alleged is concealment of the public record? Yes, Your Honor. And that was never briefed fully and all of that? It was briefed by Barton and Crochet in a motion for protective order. That was filed after the court's ruling on it, because we were not parties to the case. But the argument was never considered by the court. In its footnote one or two of its May 17, 2023 ruling, the court said she believed that our motion for protective order should be treated as a motion for reconsideration, even though we weren't parties to the case or the other briefing, and it just refused to consider the argument. OK. All right. Thank you, Your Honor. Thank you, sir. All right. Mr. English? Good morning, Your Honors. My name is Larry English, and I represent the Pele-Sharon Lewis. We first want to address the issue of standing. These defendants have no standing to bring this claim today. They rely upon La Union as the basis for bringing their standing. But La Union is distinguishable from this case as that case was about legislative privilege. And it was the Texas legislature who filed the appeal saying this issue deals with legislative privilege, therefore we have standing. Crochet and Barton are lawyers. They don't hold the privilege. LSU holds the privilege, and therefore they have no right to bring this action. The Fifth Circuit looks for three issues. They looked at whether or not the non-party seeking the appeal participated in the case. They had no participation in this case. This was a Title IX, Title VII retaliation case. They were not defendants in this case. They were never parties in this case. They never participated in this case. The only participation in this case they did was, they did file, once the court made its rulings, they did file several motions. But other than that, they had no participation in this case. Equities. They have no equities in this case. The Board of Supervisors holds the privilege. The Board of Supervisors, when the court made its ruling, it came to this court asking for relief. This court, with all due respect, they briefed this issue in great detail before this court. This court remanded it back saying, we trust that the district court will protect the attorney client privilege, and they chose not to deal with it. They have no personal stake in this case. They don't own the documents. They don't own the privilege. It is the Board of Supervisors that has the privilege, that has a stake in this case. At every step of this litigation, the Board of Supervisors has sought to protect their privilege. They have filed multiple, with all due respect, to my counsel here. The record is replete with this issue being briefed over and over again by the board. Again, it's been briefed at the district court level. It's been briefed at the appellate court level. These defendants do not have any standing, and they should not be allowed to be here. There is no issue. Counsel, when you say standing, they have no standing, what does the district court order do with respect to them? All the district court order does to them is that they are to testify. Well, so they have some standing, right? They've been ordered to do something. Well, no, no, no. With all due respect, Your Honor, they are to testify about a privilege, about privileged communications of which they don't own the privilege. They are just lawyers in this case. The LSU Board of Supervisors owns the privilege in this case, so other than them coming and being able to testify as to whether or not certain information about certain communications, they're really just witnesses. Also, we asked the court to look at the record. Plaintiff was seeking their testimony about non-privileged communications between them and Les Miles. Those emails are in the record. Those information is not privileged communication, and the court ordered that we could question the plaintiff. Correct me if I'm wrong, but the district court made findings as to the crime fraud exception, right? Yes. It made questions to the crime fraud exception as to a very narrow concealment of the documents. And we would deal with that. Well, I mean, they disagree with that. So I mean, they have standing in that sense. I thought you were arguing appellate jurisdiction. Your Honor, they are a non-party. True. And they have filed a non-party interlocutory appeal. Again, I'm not going to go back through it because I only have a limited amount of time. The court lays out what the three requirements are for you as a non-party to file an interlocutory appeal on an issue like this. I thought you were saying that their appeal doesn't fall within Mohawk. So there's no interlocutory jurisdiction, right? Your Honor, as far as these witnesses are, you've discorded. And the plaintiff, the appellate, contains they do not have, this court does not have, jurisdiction over this appeal. They were not parties in this case. They did not participate in this case. The equities does not apply to them. And they have absolutely no stake. They have no personal stake in what the district court ruled as to the attorney crime privilege. That privilege belonged to the board. A trial has been held in this case. It will certainly reach this court on appeal. The board of supervisors will have every right at this point to address this issue. Right, but they won't because they're not parties. But Your Honor, what if, and I ask this court respectfully, if the court, which the court granted that they did, that they had to come testify, they had no personal stake in that. The documents didn't belong to them. The privilege did not belong to them. They have absolutely no personal stake in this case other than they were agents of the board of supervisors and the court ordered them to testify as to certain communications. And the board, at every step of the way, protected that privilege. As to the crime fraud exception, this was a Title IX investigation. They admit in their briefings that it was a Title IX investigation. The 2011 Dear Colleague letter, which was in place, required that once student two complaint came to LSU, they were required by federal law to report this matter to the Title IX coordinator. The facts are undisputed that they did not do that. Stanley, I'm sorry, Shelby McKenzie, who was a partner at Taylor Porter, was acting as the general counsel. When this information came to him, he was aware that the Dear Colleague letter and DOE regulations required that this matter be sent to the Title IX coordinator. Instead, he brought in his two partners, Crochet and Barton. The Hush-Blackwell report has found that that was a conflict. The Dear Colleague letter is clear that Title IX investigations must be impartial. An investigation by the partner of the general counsel, and by the way, the record is complete, Taylor Porter had advised LSU on Title IX issues before. They had advised LSU on Title IX policies. They clearly, under federal law, could not be involved in the case. Now, these individuals say that the judge did not have any legal basis on her crime, fraud, reason. That is false. The student complaint memo, which is in the record, here is what Stanley Jacobs, who testified at trial, the court allowed his testimony to be supplemented. Stanley Jacobs testified that the Taylor Porter lawyers directed the board, there was three board members, directed them to conceal those documents. The LSU board of supervisors fired these lawyers when all of this information came public. Here is what the court relied on in reaching its conclusion. Vickie Crochet filed a memo to file on May 15, 2013. In there, she says, after review and discussions of the investigations, those present agreed to and accepted the findings and recommendation of the counsel with the recognition that any further investigation or remedial action was likely to endanger the student's confidentiality, which has repeatedly been requested by the student and her father since the initial report. Also, those present agreed that this was an appropriate administrative action that should not be taken without further review of the board. The board of supervisors testified, members of the board testified before the Louisiana State Senate, that what these three board members did was wrong, and this should have been brought to them. But again, these were lawyers who Stanley Jacobs said he relied on Vickie Crochet because she was a Title IX expert. Vickie Crochet knew that when she drafted this memo, she was required by federal law to turn this matter over to the Title IX coordinator. With all due respect to my counsel, you have Jenny Stewart's testimony in trial who testified in 2013 there was a Title IX coordinator in place at LSU who testified that this document should have been given to the Title IX coordinator. The Department of Education requires OCR be given annually this document. This document was supposed to have been reported. Per the dear colleague letter that is in the record, this document was supposed to be reported to OCR. It was not supposed to be stored in these lawyers' offices. Now, counsel just said that the Title IX DOE regulations require that these documents be held for seven years. The PS 74 policy of which Vickie Crochet and Bob Boyd have drafted was drafted and accepted by the university in 2014. That document says this document was to be stored consistent with state and federal law. And this document said that this document was to be stored for seven years. It's in the Hush Blackwell report. It's on page 161 of the Hush Blackwell report. There was a second document involved. That was the directive letter. And they say that the judge didn't, address all of this in her reasoning. And if you give me a second, I'll just pull that language up for you because it's very, very important. The directive letter, which was signed on August 29, 2013, by Vickie Crochet, Bob Boyd, and Les Miles, during this investigation, student two made a demand. We can hear you, Mr. Englishman. I'm sorry? We can hear you. OK. Student two made a demand on LSU. In that demand letter, student two stated that Les Miles was cruising the sororities, not less than five minutes from this building, was cruising the sorority buildings looking for victims. When that information came to Vickie Crochet and Bob Boyd under the Dear Colleague letter, they were again required to turn that information over to the Title IX coordinator. They didn't do it. Instead, they joined with Les Miles to pay off student two. And they reached an agreement on August 29, 2013. And this is what they agreed to. The originals and all copies of this letter, and the court specifically states this in her reasoning, the original and all copies of this letter will be maintained in the files of your law office and the undersigned counsel's law office only. Miles' counsel and his counsel agreed to keep this letter and its contents confidential unless compelled to divulge it by a found order of the Court of Competent Jurisdiction. And any such order shall be contested by LSU counsel and Miles' option. When USA Today did a public documents request for these documents, LSU told the USA Today these were not public documents, and you can't have them. Based off of what LSU, and the court specifically talks about this in her order and reasoning, based off of that, USA Today then filed a mandamus action. And after that mandamus action was filed, as they had agreed to in this letter, Taylor Porter notified Les Miles that a public records request had been filed. And then Taylor Porter and LSU went to court to fight the release of the document. Les Miles filed a petition to intervene into the case to fight the release of the document. And subsequently, they agreed to release the document. This is not a complicated case. There's no issue that this is a public document. There's no issue whatsoever. This is a public document. Taylor Porter is not the custodian of records for LSU. The Louisiana public records requirement. Mr. Black just read us something from the public records law saying that it's OK to store public records off-site. That case was dealing with if it's stored with an agency. In other words, So what's the difference? It's a law firm. What's the difference? A law firm is not a custodian of records, nor should a law firm in this particular case, under these particular circumstances, these documents were required to be placed with the Title IX coordinator. Poche and Barton are not the Title IX coordinator. Who was the Title IX coordinator? At that time, it was John Marshvane, according to Jimmy Stewart. He was the Title IX coordinator. And those records documents should have been went to him. Second of all, if you're looking for intent when you're talking about whether or not this is a crime or facial crime, those documents were required to be reported to OCR. They were not reported to OCR. Those documents also were required to the custodian of records. Now, LSU fired Taylor Porter, saying that they didn't know anything about this, that they did not agree for Taylor Porter to store these documents. So as to, you can't have it both ways, Your Honor. You can't be the lawyer who directs, according to Stanley Jacobs, one of the individuals who was in the room. You can't be the lawyer who directs these individuals to conceal these documents in their law offices. And when the full Board of Supervisors, who control these documents, who had the privilege over these documents, when they received that information, they fired these lawyers. When this information became public, the LSU Board of Supervisors, and it's in the record, members of the Board of Supervisors testified under oath in front of the Louisiana State Senate. They disavowed everything that these lawyers did. Mary Leach Warner, who was a current board member, Robert Dam, who was the former chairman, testified at the Louisiana State Senate that the board was not required to follow these lawyers' illegal order to them. So when you look at this case as a whole, to answer your question, Your Honor, this is not a case where a lawyer, some documents were drafted, and a lawyer kept these documents in their offices. Certainly, lawyers keep documents of clients all the time. These were a Title IX investigation covered by DOE regulations. And in fact, Your Honor, Your Honors, if you grant the relief that they are asking for, what you are saying is that DOE has absolutely no control over this process. What you will be saying is that lawyers, on their own, without the support of the full board, has the right to conceal a Title IX investigation in their law offices. These lawyers have the right to ignore DOE regulations and not report this investigation to the Department of Education. This is not a simple case, Your Honor. I understand the question that the court is asking. This is not a simple case where lawyers were working for a client, and they kept documents in their offices. This was a Title IX investigation. The Supreme Court recently ruled that the agreements between the departments in a case like this under Title IX, that's a contractual agreement, that the board contracted with the Department of Education in order to receive federal funding, and they agreed to undertake and do certain things when they did it. Part of what they agreed to, the board agreed to, was they agreed not to conceal the investigations in their offices. They agreed to hold an impartial investigation. They agreed to report. Once an investigation is made, they agreed to report it to the Department of Education. These are public documents. The board did not authorize them to do this. The board has stated publicly, and it's all this in the record. And with all due respect to this court, to what these lawyers are saying, Your Honor, the student complaint memo and the director of the letter is clear on what their intent was. They specifically state in these documents, let's store these documents in our law offices. Let's not tell the full board of what happened, and this will stay between us now. Counsel argues, and I have a minute left, counsel argues, well, the documents, they can't be concealed if somebody can ask for them. Who knew, other than the people who agreed on May 15, 2013, who knew that these documents ever existed? You can't conceal the documents from the public and then stand up in front of a court and argue in front of a court, well, the documents was in our offices, and anybody who wanted the documents, they could have asked for the documents. However, we concealed the documents, and we agreed not to tell anyone. This is not a close case. If the court grants them the relief in which you are asking for, what you will be doing is condoning that lawyers can help a client facilitate a crime and then store that information in their law offices. Thank you so much for your time. Thank you, Mr. English. Back to you, Mr. Black. Thank you. OK, a lot to unpack there. There's no duty to disclose a public record unless it's requested. That is the Louisiana law. That's black letter law. Where it's stored doesn't matter. It matters about requests. Well, no duty is if it's concealed, you can't request something you don't know exists. And that's every public record, Your Honor, because there's no duty to turn over public records when they're created to the public. They're created constantly and in huge volume. There's no duty to turn everything over until they're requested. And how they get discovered is a unique fact by fact pattern situation. But there's just no duty to turn everything over until requested. Otherwise, the billions of terabytes of information that are produced by public agencies would just be turned over to the state, to newspaper bodies. And that's not what's required. That's not state law. There's no Department of Education requirement to turn this investigation over to the Department of Education. Title IX doesn't work that way. Title IX provides parameters, its requirements for investigation, has document retention policies. But there's no obligation to turn any documents over to the Department of Education. There's no criminal violation for not having a Title IX coordinator store a public document. That's not a requirement. The court clearly has jurisdiction. As the court held in the La Union case and in the Whole Woman's Health case, Mohawk does not speak to the predicament of third parties whose claims to reasonable protection from the courts have often been met with respect. And we are third parties, and we meet that requirement. To say we had no participation in the case is to ignore that we were defendants in the case, that they sought to depose Barton and Crochet, and that Barton and Crochet have a right to file motions for protective order under the Federal Rules of Procedure, which was done, and which was denied, and which is why we are here today. LSU has not waived the privilege. And as counsel for LSU, Barton and Crochet are bound to honor that and to protect that privilege. And that is also what we are doing today. What's the import, if any, of counsel's argument about massive disavowals of the Board of Supervisors? Yeah, so the report was LSU hired Barton and Crochet to do this analysis. The report was disclosed to the president, the athletic director, the chairman of the Board of Supervisors, two other Board of Supervisors members from the athletic committee, and two persons in the athletic department. And so what happens after that is not the lawyer's concern. And who it gets shared with by the board president and the president of the university is up to them. That's not Barton and Crochet's responsibility. Your Honor, thank you for your attention. Appreciate it. All right. Thank you. Case will be submitted.